THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: July 22, 2019



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Robert J. Long and　　　　　　　　　　Case No. 19-20186-GMH
Lois A. Long,　　　　　　　　　　　　　　　　Chapter 13

　　　　Debtors.

## DECISION

　　　　Under chapter 13 of the Bankruptcy Code an individual with regular income can modify the rights of creditors by filing a debt-adjustment plan and submitting future earnings for a specified period to a trustee who then pays the creditors according to the plan, if the court confirms it. See 11 U.S.C. §§1322 & 1326. Shortly after a debtor commences such a case, the United States trustee (or a designee) must "convene and preside at a meeting of creditors." *Id.* §341(a); Fed. R. Bankr. P. 2003(a). By no later than "the day before the date on which the meeting of the creditors is first scheduled to be held", the debtor must file with appropriate tax authorities the prepetition tax returns specified in 11 U.S.C. §1308(a), unless the chapter 13 trustee gives the debtor more time, see §1308(b). If the debtor does not file "all applicable Federal, State, and local tax

returns as required by section 1308", the court cannot confirm the debtor's plan. *Id.* §1325(a)(9). The issue presented here is whether the prepetition tax returns specified in §1308(a) include returns that are not *due* to be filed with the appropriate tax authority before the date on which the meeting of creditors is first scheduled to be held.

I

Robert and Lois Long commenced this chapter 13 case on January 8, 2019. The meeting of creditors was first scheduled for February 14. ECF No. 7. The chapter 13 trustee held the meeting of creditors and concluded it that day. Five days later the trustee objected to confirmation of the plan in part because, based on the debtors' testimony at the meeting of creditors and the Internal Revenue Service's proof of claim, the trustee determined that the debtors "might not have filed all tax returns required by 11 U.S.C. § 1308." ECF No. 24, at 2.

The court ordered the parties to brief whether the debtors' 2018 income-tax returns were among those that the debtors were required to file before the date on which the meeting of creditors was first scheduled to be held, and, if so, whether the court can confirm the debt-adjustment plan in this case notwithstanding the debtors' failure to file those returns by the statutory deadline. The trustee and the debtors both filed briefs, and after a hearing, the court took the matter under advisement.

Essentially the same issue has arisen in several other cases filed in early 2019. See, e.g., *In re Perkins*, No. 19-20633 (Bankr. E.D. Wis. filed Jan. 24, 2019); *In re Skurski*, No. 19-20074 (Bankr. E.D. Wis. filed Jan. 3, 2019). In each such case the trustee held and closed the meeting of creditors on the date on which it was first scheduled to be held and promptly objected to confirmation based at least in part on non-filed returns for 2018 that were not yet due to be filed under applicable nonbankruptcy law.

II

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the

case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (The "inquiry must cease if the statutory language is unambiguous".). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

A

Section 1308(a), the text from which the parties' dispute arises, provides as follows:

> Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), if the debtor was required to file a tax return under applicable nonbankruptcy law, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.

This provision may simply require the debtor to file, before the date on which the meeting of creditors is first scheduled to be held, all tax returns for the specified prepetition taxable periods that the debtor was otherwise required to file—i.e., that were **due** to be filed—before that date. But *In re French*, 354 B.R. 258 (Bankr. E.D. Wis. 2006), offers a competing construction: that §1308(a) requires "debtors who file for Chapter 13 protection . . . to have their return for the prior year filed by the date first scheduled for the meeting of creditors, *even if* the return is not yet delinquent under [applicable nonbankruptcy law]." *Id.* at 263.

In support of its reading, *French* asserts that "§ 1308 focuses on the question of whether applicable nonbankruptcy law requires the debtor to file a return *at all*, not on when the applicable nonbankruptcy law requirement must be met." *Id.* at 262. *French*'s resort to nonbankruptcy law is sensible: courts regularly turn to nonbankruptcy law to construe terms not defined in the Bankruptcy Code, especially where the provision at issue expressly references nonbankruptcy law, as §1308(a) does. See *In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005); see also *Butner v. United States*, 440 U.S. 48, 54 (1979)

(explaining that, with some exceptions, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). The conclusion *French* draws from applicable nonbankruptcy law, however, is open to question.

The nonbankruptcy law most applicable here is the Internal Revenue Code (title 26 of the U.S. Code), which generally uses variants of "make" to refer to an individual's duty to file a return at all for a taxable period and variants of "file" to refer to an individual's obligation to submit a return to the Internal Revenue Service by some deadline. For example, the Internal Revenue Code provides that, subject to certain exceptions, "[r]eturns with respect to income taxes . . . shall be **made** by . . . [e]very individual having for the taxable year gross income which equals or exceeds" a statutorily specified "exemption amount" and that such returns "**made** on the basis of the calendar year shall be **filed** on or before the 15th day of April following the close of the calendar year". 26 U.S.C. §§6012(a)(1)(A) & 6072(a) (emphasis added). The Internal Revenue Code similarly uses "make" and "file" in provisions concerning other kinds of returns that may be required of an individual. E.g., *id.* §6019 ("Any individual who in any calendar year makes any transfer by gift other than" a transfer of a kind specified in subsection (1), (2), or (3) "shall make a return for such year with respect to the gift tax imposed by subtitle B."); *id.* §6075(b)(1) ("Returns made under section 6019 . . . shall be filed on or before the 15th day of April following the close of the calendar year.").

Read against this tax-law backdrop, §1308(a)'s past-tense use of "file" in its middle clause suggests that it covers only those returns that the debtor was required to **file** before the date on which the meeting of creditors was first scheduled to be held (and not, as *French* holds, all returns that the debtor was required to **make** for the specified prepetition periods, without regard to whether the debtor was required to file them before that date). This reading of §1308(a) is consistent with contemporaneous additions to the Bankruptcy Code that distinguish, for example, among tax returns (1) "required under applicable law", i.e., that must be "**made**" for a taxable period;

(2) "due" by some "due date for **filing** such return"; and (3) actually "**filed** with the taxing authority". See 11 U.S.C. §521(e)(2)(A)(i), (f)(1), (f)(2) & (j)(1) (emphasis added).

Moreover, this reading holds even where the applicable nonbankruptcy law is state or local law (that is, where §1308(a) requires a debtor to file state or local returns). Section 1308(a) is a provision of the Bankruptcy Code that requires an individual debtor to file certain tax returns with appropriate tax authorities by a specified date. Such a provision is best read in harmony with provisions of the Internal Revenue Code that require an individual taxpayer to file certain tax returns with the Internal Revenue Service—the appropriate authority with respect to returns that an individual must make and file under federal law—by a specified date. Accordingly, the best reading of §1308(a), as informed by federal-tax-law usage, is that it requires a debtor in a chapter 13 case to file only those returns that are due to be filed before the date on which the meeting of creditors is first scheduled to be held, whether the returns at issue are federal, state, or local returns.

*French*'s contrary reading of §1308(a), which construes "filed" to mean the duty to make a return, accelerates the deadline by which a chapter 13 debtor who files a petition early in the calendar year must file an income-tax return for the prior year. *French*'s reading thus requires a surprising deviation from the principle that the Bankruptcy Code generally takes rights and obligations created by nonbankruptcy law as it finds them, including deadlines for filing tax returns. Such a deviation should be disfavored unless compellingly justified.

B

In determining the meaning of §1308(a), the court also looks beyond its language to "the specific context in which that language is used", including, most obviously, to §1308's other provisions. *Robinson*, 519 U.S. at 341. Section 1308(b)(1) allows the trustee to "hold open" the meeting of creditors "for a reasonable period of time to allow the debtor an additional period of time to file any . . . returns" required by §1308(a) that the

debtor did not file before the first date on which the meeting of creditors was scheduled to be held. And §1308(b)(2) provides that, under limited circumstances, "the court may extend the filing period established by the trustee under paragraph (1)".

The length of the "additional period of time" that the trustee may allow under §1308(b)(1) is limited based on whether a non-filed return required by §1308(a) was past due when the debtor filed the petition under chapter 13:

> [S]uch additional period of time shall not extend beyond—
>
> (A) for any return that is past due as of the date of the filing of the petition, the date that is 120 days after the date of that meeting; or
>
> (B) for any return that is not past due as of the date of the filing of the petition, the later of—
>
> (i) the date that is 120 days after the date of that meeting; or
>
> (ii) the date on which the return is due under the last automatic extension of time for filing that return to which the debtor is entitled, and for which request is timely made, in accordance with applicable nonbankruptcy law.

§1308(b)(1). Under §1308(b)(2) the court may extend the period established by the trustee under §1308(b)(1) "for . . . a period of not more than 30 days for returns described in paragraph (1)(A)" and "a period not to extend after the applicable extended due date for a return described in paragraph (1)(B)." §1308(b)(2)(A) & (B).

*French* finds in its "review of subsection (b) of § 1308" support for its reading of §1308(a). 354 B.R. at 264. *French* reasons that to interpret §1308(a) to apply only to those returns that become due before the date on which the meeting of creditors is first scheduled to be held "would be to render subsection 1308(b)(1)(B) meaningless":

> If "required to file a tax return under applicable [non]bankruptcy law" means "if required *by the date first set for the § 341 meeting* to file a tax return under applicable nonbankruptcy law," then there is no reason to give a debtor who hasn't filed a non-delinquent return additional time to do so. And as the Seventh Circuit has firmly held, courts cannot "construe a

> statute in a way that makes words or phrases meaningless, redundant, or superfluous."

*Id.* (quoting *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004)).

This reasoning is mistaken, at least in part. Section 1308(b)(1)(B) is certainly **not** entirely meaningless if "'required to file a tax return under applicable [non]bankruptcy law' means 'if required by the date first set for the § 341 meeting to file a tax return under applicable nonbankruptcy law'". See *id.* (emphasis omitted). Section 1308(b)(1)(B)(i) applies where a debtor fails to file a tax return that becomes due **after** the petition is filed but **before** the first date on which the meeting of creditors is scheduled to be held. For example, §1308(b)(1)(B)(i) applies where a debtor files a chapter 13 petition on March 4, the debtor is required under 26 U.S.C. §6012(a)(1) to make a return with respect to income taxes for the prior year, the debtor is required under 26 U.S.C. §6072(a) to file the prior year's return by April 15, the meeting of creditors is first scheduled to be held on April 23, and that date arrives without the debtor having filed the prior year's return or obtained an extension of the tax-filing deadline from the taxing authority. Under such circumstances, the debtor arrives at the first meeting of creditors having failed to file a tax return that became due under nonbankruptcy law before that meeting but was **not** due under nonbankruptcy law when the debtor filed the petition. That unfiled tax return is covered by §1308(a), and §1308(b)(1)(B)—rather than §1308(b)(1)(A)—limits the trustee's power to allow the debtor more time to file that return by holding open the meeting of creditors.

This reading, though, may render §1308(b)(1)(B)(ii) superfluous. That clause of subparagraph (B) provides that the trustee may allow the debtor more time to file a return that was not past due when the petition was filed by holding open the meeting of creditors to "the date on which the return is due under the last automatic extension of time for filing that return to which the debtor is entitled, and for which request is timely

made". If §1308(a) only requires the filing of returns due under nonbankruptcy law before the date on which the meeting of the creditors is first scheduled to be held, then it arguably does **not** require the filing of a return for which the general filing deadline falls before that date **if** the return is not due until on or after that date because the debtor obtained an automatic extension of the time for filing that return. Under this reading, there may not be any tax returns that a debtor must file under §1308(a) that are also subject to clause (ii) of §1308(b)(1)(B). That clause is not superfluous, however, if an automatic extension is understood to simply permit the late filing of a return that nonbankruptcy law requires the debtor to file by the ordinary statutory deadline.

Even accepting this possible superfluity, the canon against surplusage is inadequate to support *French*'s conclusion. "The canon against surplusage is not an absolute rule . . . ." *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013). Indeed, it "assists only where a competing interpretation gives effect to every clause and word of a statute." *Id.* (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011)).

*French*'s competing interpretation doesn't give effect to the statute's entire text either, because its interpretation makes §1308(a)'s conditional clause redundant. *French* reasons that §1308(a)'s conditional clause, "if the debtor was required to file a tax return under applicable nonbankruptcy law," refers to "whether applicable nonbankruptcy law requires the debtor to file a return *at all*". 354 B.R. at 262. But if §1308(a)'s final clause—requiring the debtor to "file with appropriate tax authorities all tax returns for all taxable periods" specified—is read to require the debtor to file only those returns that applicable nonbankruptcy law requires the debtor to make (which is the most natural, and perhaps the only reasonable, reading of that language), then the conditional clause adds nothing: §1308(a) could, without any loss of meaning, simply read, "Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending

on the date of the filing of the petition." (And, as we'll see, this is the basic form in which §1308(a) was originally proposed but not enacted. See Bankruptcy Reform Act of 1998, H.R. 3150, 105th Cong. §517(b)(1) (as introduced in House, Feb. 3, 1998).)

At any rate, "[r]edundancy is not a silver bullet", and "[s]ometimes the better overall reading of [a] statute contains some redundancy." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019); see also Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012) ("Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance . . . ."). "If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute. But only a clue." *Rimini St.*, 139 S. Ct. at 881. Here, the competing interpretations of §1308(a) **both** risk redundancy (that is, under either reading some of §1308's language is arguably not needed or useful). So, the canon against surplusage is of little use in resolving the present issue.

C

Next, a court construing the meaning of §1308's text should consider which plausible construction best fits "the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. When Congress enacted §1308, it also enacted §1325(a)(9). Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §716(a) & (b), 119 Stat. 23, 129–30. Review of this closely related provision helps to clarify the meaning of §1308(a), which, as the preceding discussion suggests, may not be immediately determinable from its language and specific statutory context.

Section 1325(a) generally provides that, subject to provisions not at issue here, "the court shall confirm a plan if" (and only if) all of the conditions described in its nine paragraphs are met. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277–78 & n.14 (2010). Section 1325(a)(9) contains the last such condition, that "the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308." Simply

put, if a debtor fails to comply with §1308, then §1325(a)(9) unambiguously bars the court from confirming the debtor's debt-adjustment plan.

If *French*'s reading of §1308(a) were correct, then debtors in circumstances like those here could never satisfy §1325(a)(9), which would preclude plan confirmation. The debtors in this case filed their petition in January 2019, but they did not file their 2018 federal income-tax returns with the Internal Revenue Service before the date on which the meeting of creditors was first scheduled to be held. The trustee did not hold open that meeting to allow them any additional time to file those returns, so the court could not extend the filing period. See §1308(b)(2) (allowing the court to "extend the filing period established by the trustee under paragraph (1)" only by "order entered before the tolling of any applicable filing period determined under paragraph (1)"). Accordingly, it is no longer possible for these debtors to file "all applicable . . . tax returns as required by section 1308". §1325(a)(9).

The trustee resists this conclusion, contending that §1325(a)(9) "condition[s] confirmation of a plan upon the filing of all required tax returns for the four-year period immediately preceding the filing of a debtor's petition" but does not require literal compliance with §1308's timing provisions. ECF No. 26, at 4. The debtor can satisfy §1325(a)(9), the trustee maintains, "by filing the required tax returns after the deadline to file under §1308(a) but before a hearing on confirmation." *Id.*

This might, perhaps, be a construction worthy of consideration if, for example, §1325(a)(9) provided that the debtor must file all tax returns **required by** §1308(a) before confirmation. See §1308(b)(1) (referring to "the tax returns required by subsection (a)"). But §1325(a)(9) does not so provide. Instead, it states that the debtor must have "filed all applicable . . . tax returns **as** required by section 1308". §1325(a)(9) (emphasis added). That is, §1325(a)(9) requires, as a condition of plan confirmation, that the debtor file all applicable tax returns by the deadline specified in §1308(a) or within any period of additional time provided by the trustee under §1308(b)(1), subject to the

court's limited ability to extend that period under §1308(b)(2). If the debtor does not comply with the deadline for filing the previous years' tax returns as provided under §1308 and the time for such compliance has passed, the debtor cannot file returns "as required by section 1308". The debtor cannot then satisfy §1325(a)(9), and the court cannot confirm the plan. See *Espinosa*, 559 U.S. at 277–78 & n.14.

If the court cannot confirm the plan, continuing the case under chapter 13 serves no legitimate purpose, and the court should dismiss it or convert it to a case under another chapter of the Bankruptcy Code. See 11 U.S.C. §1307(c)(5) (permitting the court to dismiss or convert a case "for cause, including . . . denial of confirmation of a plan . . . and denial of a request made for additional time for filing another plan or a modification of a plan"). And, even if the court does not convert or dismiss the case, "a party in interest or the United States trustee" can force dismissal or conversion "[u]pon the failure of the debtor to file a tax return under section 1308". §1307(e) (enacted as Bankruptcy Abuse Prevention and Consumer Protection Act §716(c), 119 Stat. at 130 ("Dismissal or Conversion on Failure to Comply"), reported in H.R. Rep. No. 109-31, pt. 1, at 104 (2005) ("[I]f a chapter 13 debtor fails to file a tax return as required by section 1308, the court must dismiss the case or convert it . . . on request of a party in interest or the United States trustee . . . .")).

The troubling upshot of all this is, if §1308(a) requires chapter 13 debtors to file tax returns that are not yet due under nonbankruptcy law, as *French* holds and the trustee insists, then the chapter 13 trustee has unchecked authority to scuttle a debt-adjustment case filed early in the year by declining to hold open the meeting of creditors to afford a debtor additional time to meet a supposed Bankruptcy Code deadline to file with taxing authorities tax returns not yet due under the tax laws that govern timely filing of those returns with those taxing authorities. What's more, under §1325(a)(9) and §1308(a) as *French* construes it, the trustee can doom a case in which the debtor is unable to comply with §1308(a) because the meeting of creditors is first

scheduled to be held **before** the Internal Revenue Service starts accepting tax returns for the prior year. See Fed. R. Bankr. P. 2003(a) (providing that the meeting of creditors may be scheduled for as early as 21 days after the commencement of a chapter 13 case); News Release, IRS kicks off 2019 tax-filing season as tax agency reopens; Use IRS.gov to avoid phone delays (Jan. 28, 2019), https://www.irs.gov/newsroom/irs-kicks-off-2019-tax-filing-season-as-tax-agency-reopens-use-irsgov-to-avoid-phone-delays (explaining that "[t]he Internal Revenue Service . . . started accepting . . . federal tax returns for tax year 2018" on January 28, 2019).

*French* seems to presume that these problematic results will not arise: "the apparent harshness of bumping up the deadline for filing one's tax returns for debtors who file bankruptcy early in the year is softened by subsection (b)(1)(B), which lets the debtor have until April 15—and beyond, if she appropriately seeks an extension—to file the previous year's returns." 354 B.R. at 264. But, again, §1308(b)(1) leaves it to the trustee alone to soften the harshness of *French*'s reading of §1308(a), and where, as here, the trustee routinely closes the meeting of creditors, that harshness goes untempered.

Notably, in *French* the court was not faced with a debt-adjustment case in which confirmation of the plan was proscribed by operation of law due to the trustee's acts. There, the debtor filed the chapter 13 petition in January 2006, and the trustee held open that meeting to allow the debtor additional time to file her tax returns for 2005. The debtor moved for confirmation of the plan asserting that §1308(a) did not require her to file her 2005 returns, as those returns were not due until April 15. The court disagreed and denied the debtor's motion, the trustee held and concluded the meeting of creditors in late March, and the court confirmed the plan that June. See *In re French,* Case No. 06-20066 (E.D. Wis.). *French*'s reading of §1308(a) thus had no practical consequence in that case other than to delay confirmation of the plan. See 354 B.R. at 264.

Here, the stakes are different. Again, if *French*'s construction of §1308(a) is correct, then this case must end or proceed under another chapter of the Bankruptcy

Code, as there is nothing further to be gained under chapter 13. Statutory language should not be construed one way or another simply to avoid "a result some might view as harsh". *Id.* Indeed, as *French* observes, the Bankruptcy Code "contains a number of provisions which some might consider harsh". *Id.* But *French*'s reading of §1308(a) places debtors who file chapter 13 petitions early in the year at the mercy of the trustee and leaves them with no recourse where the trustee, by action or omission, requires them to file tax returns days, weeks, or even months before those returns are due under applicable nonbankruptcy law. This surprising result is one to be avoided if a reasonable competing construction of the text avoids it, as is the case here.

D

The foregoing discussion demonstrates that construing §1308(a) to require debtors to file, before the date on which the meeting of creditors is first scheduled to be held, only those returns for the specified prepetition taxable periods that applicable nonbankruptcy law required the debtor to file by that date is not only workable but is, in general, a preferable construction to *French*'s. Still, because its text, alone or in context, is ambiguous, the court also considers the legislative history of §1308(a), as *French* does. While "[l]egislative history is problematic under the best circumstances," *Bd. of Trade of City of Chicago v. S.E.C.*, 187 F.3d 713, 720 (7th Cir. 1999), "judges may learn from [it]" because "[c]larity depends on context, which legislative history may illuminate." *In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989).

As noted above, §1308 and various related provisions, including §1307(e) and §1325(a)(9), were added to the Bankruptcy Code when Congress passed and the President signed into law the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. §716, 119 Stat. at 129–31. One commentary on the history of the 2005 Act explains that its enactment "brought to a close a tumultuous legislative reform initiative" that began more than 10 years earlier and traces "its genesis . . . to the formation of a commission charged by Congress with a modest mandate to review the

state of the bankruptcy law and system". Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 485, 485 (2005). To appreciate the context from which §1308 arose, one must consider this "genesis" and the legislative efforts that followed, concluding with the 2005 Act itself.

1

The 2005 Act has its roots in the Bankruptcy Reform Act of 1994, the enactment of which established the National Bankruptcy Review Commission ("NBRC"). Pub. L. No. 103-394, §602, 108 Stat. 4106, 4147. The 1994 Act tasked the NBRC to (1) "investigate and study issues and problems relating to [the Bankruptcy Code]", "evaluate the advisability of proposals and current arrangements with respect to such issues and problems", "solicit divergent views of all parties concerned with the operation of the bankruptcy system", and "prepare and submit to the Congress, the Chief Justice, and the President a report" within two years of its first meeting. *Id.* §§603 & 608. On October 20, 1997, the NBRC published its final report. See Jensen, *supra*, at 487 ("The 1028-page report, accompanied by 272 pages of additional and dissenting views, contained 172 recommendations."); see also NBRC, *Bankruptcy: The Next Twenty Years* (1997).

Among its recommendations, the NBRC proposed, "[a]s a prerequisite for confirming a Chapter 13 plan," requiring the debtor to "have filed tax returns for **all** tax periods ending within six years prior to the petition date" by no later than "one day prior to the conclusion of the first meeting of creditors" unless the trustee "continue[s] the first meeting to allow additional time to file returns." NBRC, *supra*, at 962–63 (emphasis added). NBRC, *supra*, at 964. The report describes the "anticipated procedure" as follows:

> the trustee would determine at the initial § 341 meeting if a debtor has filed necessary tax returns. If not, but the trustee is satisfied that the debtor is making a reasonable effort to get the returns prepared and filed, the trustee may continue the § 341 meeting for up to 120 days or until the last available extension for a prepetition return. . . . For example, a Chapter 13 debtor

> filing a bankruptcy petition on January 1, 1997, would have the option under tax law of obtaining an extension through August 15, 1997, to file a 1996 income tax return.

*Id.* at 964. The NBRC also proposed, as a "safety valve", allowing the court to extend the return-filing deadline where "the debtor has made a good faith effort to get returns prepared and filed, but for unanticipated reasons beyond the debtor's control (delay in receiving necessary information from tax authorities or incapacitating injury, for example) has been unable to do so." *Id.* at 963 & 965.

2

Between the publication of the NBRC's final report and the enactment of the 2005 Act, members of Congress introduced numerous bills (all of which failed) to impose the requirement that chapter 13 debtors file prepetition tax returns as a condition of plan confirmation. From the first, these bills proposed vesting the trustee with discretion to continue the meeting of creditors "to allow the debtor additional time to file any unfiled returns", as the NBRC recommended. E.g., H.R. 3150 §517(b)(1), reported in H.R. Rep. No. 105-540, at 111 & n.131 (1998) (citing NBRC, *supra*, at 961–65). These bills also uniformly offered a safety valve of sorts, proposing, for example, that the court be permitted to "extend the deadlines set by the trustee" where "the failure to file the returns as required is because of circumstances beyond the control of the debtor," though only "upon notice and hearing[] and order entered before the lapse of [the] deadline". See *id.*; see also Bankruptcy Reform Act of 1999, H.R. 833, 106th Cong. §816(b)(1) (as introduced in House, Feb. 24, 1999); Bankruptcy Abuse Prevention and Consumer Protection Act of 2001, H.R. 333, 107th Cong. §716(b)(1) (as introduced in House, Jan. 31, 2001). The basic substance, if not the precise language, of these proposals was codified in §1308(b).

Where these failed bills differ most significantly is in the language they propose for §1308(a). The earliest of these bills would have created §1308(a) with the NBRC's

suggested lookback period but without the conditional middle clause present in §1308(a) as ultimately enacted and at issue here:

> On or before the day prior to the day on which the first meeting of the creditors is convened under section 341(a) of this title, the debtor shall have filed with appropriate tax authorities all tax returns for all taxable periods ending in the 6-year period ending on the date of filing of the petition.

H.R. 3150 §517(b)(1). A subsequent measure contained the same language but with a reduced (three-year) lookback period. H.R. 833 §816(b)(1). Finally, a bill introduced in 2001 in the 107th Congress included both a four-year lookback period and, for the first time, a conditional middle clause:

> Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), **if the debtor was required to file a tax return under applicable nonbankruptcy law**, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.

H.R. 333 §716(b)(1) (emphasis added). This language remained unaltered in subsequent measures, including the 2005 Act, and was codified in §1308(a). See Bankruptcy Abuse Prevention and Consumer Protection Act of 2003, H.R. 975, 108th Cong. §716(b)(1) (as introduced in House, Feb. 27, 2003).

Legislative materials suggest that the addition of §1308(a)'s conditional clause limited its scope. For example, in April 1999 the House Judiciary Committee reported on a pending bill that included §1308(a) without the conditional clause, construing it to require "a chapter 13 debtor to file **all** Federal, State, and local tax returns for the [applicable] period preceding the filing of the case on or before the first meeting of creditors." H.R. Rep. No. 106-123, pt. 1, at 162 (emphasis added) (reporting H.R. 833 §816(a) & (b)). But in July 2002 a conference committee formed to reconcile versions of a measure passed by the House and the Senate that both proposed to codify §1308(a) *with* the conditional clause construed the provision "to require a chapter 13 debtor file all

**applicable** Federal, state, and local tax returns . . . . by the date on which the meeting of creditors is first scheduled". H.R. Rep. No. 107-617, at 247 (Conf. Rep.) (emphasis added) (reporting H.R. 333 §716(a) & (b)). The conference report states, "This provision requires a chapter 13 debtor to be **current** on the filing of tax returns for the [applicable] period preceding the filing of the case." *Id.* (emphasis added). Reports on later measures, including the 2005 Act, similarly describe §1308(a) prior to its enactment. See, e.g., H.R. Rep. No. 108-40, pt. 1, at 208 (2003) (reporting H.R. 975 §716(a) & (b)).

3

Less than 2 weeks before the 2005 Act became law, the House Judiciary Committee "report[ed] favorably thereon," describing section 716(a) & (b) of the Act, the enactment of which created §1325(a)(9) and §1308, in part, as follows:

> Under current law, a debtor may enjoy the benefits of chapter 13 even if delinquent in the filing of tax returns. Section 716 of the Act responds to this problem. Subsection (a) amends section 1325(a) of the Bankruptcy Code to require a chapter 13 debtor to file all applicable Federal, state, and local tax returns as a condition of confirmation as required by section 1308 (as added by section 716(b)). Section 716(b) adds section 1308 to chapter 13 to require a chapter 13 debtor **to be current on the filing of tax returns** for the four-year period preceding the filing of the case.

H.R. Rep. No. 109-31, at 1 & 104 (emphasis added).

The House Judiciary Committee's description of §1325(a)(9) and §1308 is consistent with construing those provisions to refer only to returns that nonbankruptcy law requires the debtor to have filed before the first meeting of creditors. Through the end of this long legislative process the provisions were ultimately directed at the "problem" of debtors "enjoy[ing] the benefits of chapter 13 even if **delinquent** in the filing of tax returns" by "requir[ing] a chapter 13 debtor to be **current** on the filing of tax returns for the four-year period preceding the filing of the case". *Id.* (emphasis added). As *French* observes, its reading of §1308 cannot be harmonized fully with the "stated intentions" of Congress, which "appear to be directed at debtors who are *delinquent* in

filing tax returns, not to debtors whose reason for not filing by the date specified in §1308 is because the tax code deadline has not yet arrived." 354 B.R. at 264; see also *id.* at 261 ("It . . . appears that Congress wanted to punish those debtors who were delinquent in filing tax returns, by withholding confirmation until they did so."). The more restrictive reading of §1308(a) resolves this dissonance.

The House Judiciary Committee's report also notes: "A number of provisions in the act would require debtors to have filed tax returns before a bankruptcy case may continue. Those provisions would help States identify potential claims in bankruptcy cases where they may be owed delinquent taxes." H.R. Rep. No. 109-31, at 43–44. *French* takes from this passage that, in enacting §1308, "Congress appears to have wanted to make sure tax returns were filed in order to assist state taxing authorities in determining whether they had claims for delinquent taxes." 354 B.R. at 260–61 & 264. It is difficult to discern what this passage says about §1308 specifically, however, as it seems to refer, quite vaguely, to numerous provisions of the 2005 Act that require debtors to file tax returns before a bankruptcy case may continue. See, e.g., Bankruptcy Abuse Prevention and Consumer Protection Act §§436(a) & 442(a), 119 Stat. at 112–13, 115–16 (codified at 11 U.S.C. §§1112(b)(4)(I) & 1116(6)(A)).

One such provision amended §521 by adding subsection (j), empowering taxing authorities to compel debtors to file delinquent tax returns that come due postpetition, without regard to whether §1308(a) requires the filing of the same returns as a condition of plan confirmation. See *id.* §720. Section 521(j) states that, "[n]otwithstanding any other provision of [title 11]," the court must dismiss or convert a case "if the debtor fails to file a tax return that becomes due after the commencement of the case or to properly obtain an extension of the due date for filing such return," the taxing authority requests dismissal or conversion based on that failure, and "the debtor does not file the required return or obtain the [referenced] extension . . . within 90 days". §521(j)(1) & (2). Given §521(j), reading §1308(a) not to apply to returns that nonbankruptcy law requires the

debtor to file with appropriate tax authorities on or after the date on which the meeting of creditors is first scheduled to be held does not detract from the apparent intentions of Congress "to assist state taxing authorities" and "create a strong incentive for debtors" to file delinquent tax returns. See *French*, 354 B.R. at 264.

III

For the foregoing reasons, the court overrules the trustee's objection to plan confirmation under 11 U.S.C. §1325(a)(9) to the extent based on the debtors' failure to file tax returns that were due to be filed with the Internal Revenue Service on or after the date on which the meeting of creditors was first scheduled to be held. The court will enter a separate order so providing.

#####